UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOE HAND PROMOTIONS, INC., as
Broadcast Licensee of the August 26, 2017
Mayweather vs. McGregor Match,

                Plaintiff,

                                          REPORT AND
                                          RECOMMENDATION
     -against-                                  19 CV 871 (NGG)(RML)

VIRGILIO DILONE, individually, and as
officer, director, shareholder, and/or principal
of LA VIDA LOCA RESTAURANT AND
BAR CORP., d/b/a MOMENTOS BAR &
GRILL, and LA VIDA LOCA RESTAURANT
AND BAR CORP., d/b/a MOMENTOS BAR
& GRILL,

                Defendants.
---------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated July 1, 2019, the Honorable Nicholas G. Garaufis, United States District Judge, referred plaintiff's motion for default judgment against defendants Virgilio Dilone ("Dilone") and La Vida Loca Restaurant and Bar Corp., d/b/a Momentos Bar and Grill ("Momentos") (collectively, "defendants") to me for Report and Recommendation. For the reasons set forth below, I respectfully recommend that plaintiff's motion be granted with respect to its claim against Momentos under the Federal Communications Act, but denied as to Dilone; that its claim under the Copyright Act be denied as to both defendants; and that it be awarded $20,100 in damages, $1,710 in attorney's fees, and $460 in costs.

**BACKGROUND AND FACTS**

        Plaintiff Joe Hand Promotions, Inc. ("plaintiff") brought this action on February 14, 2019, alleging violations of the Federal Communications Act of 1934 (the "FCA"), codified

as amended, 47 U.S.C. §§ 553 and 605, and the Copyright Act of 1976, codified as amended, 17 U.S.C. §101, et. seq., and seeking statutory damages, enhanced damages, attorney's fees, and costs. (Complaint, dated Feb. 19, Dkt. No. 1; Amended Complaint, dated Feb. 14, 2019 ("Am. Compl."), Dkt. No. 8.) The Clerk of the Court noted defendants' defaults pursuant to Federal Rule of Civil Procedure 55(a) on April 29, 2019. (Clerk's Entry of Default, dated Apr. 29, 2019, Dkt. No. 13.) On June 28, 2019, plaintiff moved for default judgment against both defendants. (Plaintiff's Motion for Default Judgment, dated June 28, 2019, Dkt. No. 16.) Judge Garaufis referred plaintiff's motion to me. (Order Referring Motion, dated July 1, 2019.) I ordered defendants to file any opposing submissions on or before August 5, 2019. (Order, dated July 3, 2019, Dkt. No. 17.) To date, neither defendant has contacted the court.

Plaintiff, a Pennsylvania corporation "was granted the exclusive rights of distribution and public performance as to commercial establishments" for the August 26, 2017 prize fight between Floyd Mayweather Jr. and Conor McGregor (the "Program"). (Am. Compl. ¶¶ 5-6; see also Affidavit of Joe Hand, Jr., sworn to May 16, 2019 ("Hand Aff."), Dkt. No. 16-1, ¶ 3.) The broadcast of the Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. (Am. Compl. ¶ 21.) For a fee, plaintiff entered into licensing agreements with commercial establishments in New York. (Id. ¶ 22.) Upon receipt of the licensing fee, plaintiff granted its customers the right to broadcast the Program and the ability to unscramble its encrypted signal. (Id.)

Momentos is a commercial establishment in Queens, New York. (Id. ¶ 17.) Dilone is an officer, director, shareholder, and/or principal of Momentos. (Id. ¶ 8.) Neither Momentos, nor Dilone individually, was contractually authorized by plaintiff to broadcast the Program. (Id. ¶¶ 25, 42.) Nonetheless, an auditor hired by plaintiff visited Momentos on August

26, 2017 and observed six television sets showing the Program, with approximately one hundred patrons present. (Affidavit of Cosmo Lubrano, sworn to Aug. 27, 2017 ("Lubrano Aff."), Ex. C to Hand Aff., Dkt. No. 16-2.) The auditor additionally reported that he was charged a $20 cover fee to enter Momentos on the night of the broadcast. (Id.)

Plaintiff contends that its programming cannot be "mistakenly or innocently" intercepted. (Hand Aff. ¶ 12.) Thus, plaintiff asserts that the only means by which the Program could have been broadcast inside Momentos is through defendants' unlawful interception of the signal. (See id. ¶¶ 13-14.) Plaintiff seeks a total of $75,000 in damages, consisting of $10,000 in statutory damages and $25,000 in enhanced damages under the FCA, as well as $10,000 in statutory damages and $30,000 in enhanced damages under the Copyright Act. (Affidavit of Julie Cohen Lonstein, Esq., sworn to June 28, 2019 ("Lonstein Aff."), Dkt. No. 16-3, at 13-14.) It additionally seeks $4,246.50 in attorney's fees and costs. (Id.)

## DISCUSSION

### A. Service of Process

"A court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10 CV 2522, 2012 WL 728227, at *4 (E.D.N.Y. Mar. 6, 2012) (quoting Copelco Capital, Inc. v. Gen. Counsul of Bolivia, 940 F. Supp. 93, 94 (S.D.N.Y. 1996)). Even after entry of default, the court retains discretion over whether to grant a final default judgment and "may appropriately review the adequacy of service." Avanti Enters., Inc. v. A & T Produce, No. 09 CV 1185, 2010 WL 3924771, at *1 (E.D.N.Y. July 21, 2010), report and recommendation adopted, 2010 WL 3909243 (E.D.N.Y. Sept. 30, 2010).

Federal Rule of Civil Procedure 4(h) provides, <u>inter alia</u>, that a corporation may be served following laws of the state in which the court is located or where service is made. <u>See</u> FED. R. CIV. P. 4(h)(1)(A) (incorporating FED. R. CIV. P. 4(e)(1)). In New York, a process server may properly serve a corporation by serving the Secretary of State as an agent for the corporation. <u>See</u> N.Y. BUS. CORP. LAW § 306(b)(1); <u>J & J Sports Prods., Inc. v. Enriquez</u>, No. 19 CV 2384, 2019 WL 4963108, at *1 (E.D.N.Y. Oct. 7, 2019). The affidavit of service filed with respect to Momentos indicates that plaintiff's process server delivered duplicate copies of the summons and complaint, along with the statutory fee, to an authorized agent at the office of the Department of State in Albany, New York. (<u>See</u> Affidavit of Service of James Perone, sworn to Feb. 22, 2019, Dkt. No. 9.) Thus, plaintiff effected proper service on Momentos.

Federal Rule of Civil Procedure 4(e) provides, <u>inter alia</u>, that an individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." FED. R. CIV. P. 4(e)(2)(B). It also provides that an individual may be served according to state law. <u>See</u> FED. R. CIV. P. 4(e)(1). New York law, similarly, provides that an individual may be served by (1) delivering the summons and complaint to a person of suitable age and discretion at the defendant's dwelling or usual abode and (2) mailing those documents to the defendant's last known address. N.Y. C.P.L.R. § 308(2).

Plaintiff has filed two affidavits of service with respect to Dilone. The first affidavit indicates that a process server delivered the summons and complaint to someone named "Mr. Richard," a person of suitable age and discretion who resides at Dilone's purported dwelling, 5009 Broadway, Apartment 205, New York, New York 10034 (the "Broadway Address"). (<u>See</u> Affidavit of Service of Yoler Jean-Baptiste, sworn to Mar. 7, 2019 ("Jean-

4

Baptise Aff."), Dkt. No. 11.)  A second affidavit indicates that a different process server mailed a copy of those documents to that same address following the initial service.  (See Affidavit of Service of Kelly Roland, sworn to Mar. 4, 2019, Dkt. No. 11.)

Here, while the method of service was proper, plaintiff offers only conclusory statements, and no independent evidence, that the Broadway address was actually where Dilone resided at the time of service.  The Jean-Baptise affidavit states, without elaborating on how it is known, that the Broadway Address was Dilone's address and is bare as to any details of Jean-Baptiste's conversation with Mr. Richard that may have confirmed or denied Dilone's residence.[1]  (See Jean-Baptise Aff.)  It is plaintiff's burden to prove that service was proper and "[c]onclusory statements that service was properly effected are insufficient to carry that burden." Almonte v. Suffolk Cty., No. 10 CV 5398, 2012 WL 1820581, at *2 (E.D.N.Y. May 16, 2012) (citations omitted), report and recommendation adopted, 2012 WL 2357369 (E.D.N.Y. June 11, 2012), aff'd, 531 F. App'x 107 (2d Cir. 2013).  While a process server's affidavit generally establishes a presumption of proper service, Onewest Bank N.A. v. Elliott, No. 15 CV 4395, 2016 WL 3766062, at *2 (E.D.N.Y. May 23, 2016), report and recommendation adopted, 2016 WL 3746564 (E.D.N.Y. July 8, 2016), courts have rejected affidavits that were ambiguous as to essential details, see, e.g., J & J Sports Prods., Inc. v. Dowling, No. 18 CV 5086, 2019 WL 4727448, at *1 (E.D.N.Y. Sept. 27, 2019); Prescription Containers, Inc. v. Cabiles, No. 12 CV 4805, 2014 WL 1236919, at *8 (E.D.N.Y. Feb. 14, 2014), report and recommendation adopted, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014); DeMott v. Bacilious, No. 11 CV 6966, 2012 WL 601074, at

---

[1] I note that simply establishing that a person named Virgilio Dilone lived at the Broadway Address at the time of service would not be sufficient.  Rather, plaintiff would need to establish that the Virgilio Dilone who is the alleged officer, director, shareholder, and/or principal of Momentos resided at that address.

5

*6-7 (S.D.N.Y. Feb. 24, 2012).  Therefore, I respectfully recommend that plaintiff's motion for default judgment be denied as to Dilone for failure to prove proper service.

### B. Default Judgment as to Momentos

A defendant's default "is deemed to constitute a concession of all well-pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Once a default is entered, the court "is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court then must "determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law." Id.  Once liability has been established, the "decision whether to enter default judgment is committed to the district court's discretion." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015).  The court need not conduct a hearing to determine damages if it can rely on detailed affidavits and documentary evidence to do so. House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010).

1. Federal Communications Act

Section 605(a) of the FCA provides, in relevant part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a).  Courts in the Second Circuit have applied section 605 to the theft of cable communications. Joe Hand Promotions, Inc. v. Beer Closet, Inc., 17 CV 3735, 2018 WL 4138938, at *2 (E.D.N.Y. July 27, 2018) (collecting cases), report and recommendation adopted, 2018 WL 4119548 (E.D.N.Y. Aug. 29, 2018).

Plaintiff's allegations establish Momentos' liability under section 605(a). Plaintiff held exclusive closed-circuit distribution rights to the Program. (Am. Compl. ¶ 6.) Momentos showed the Program on August 26, 2017, without having entered into a licensing agreement with plaintiff authorizing it to do so. (Id. ¶¶ 25, 42.) "Courts in this jurisdiction have consistently found that such allegations are sufficient to establish liability under Section 605(a)." J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (collecting cases). Accordingly, I respectfully recommend that default judgment be entered against Momentos under section 605(a).[2]

    2. Copyright Act

Plaintiff also asserts a claim under the Copyright Act, 17 U.S.C. §101, et. seq. "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). With respect to the first element, a valid certificate of copyright registration creates a rebuttable presumption of copyright validity. See Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997). Here, while plaintiff alleges ownership of a valid copyright (see Am. Compl. ¶ 40), it has not submitted a copy of its certificate of copyright registration to the court and thus is not entitled to the presumption of

---

[2] Plaintiff additionally asserts a claim pursuant to section 553 of the FCA. However, as plaintiff acknowledges, "the law in this Circuit is clear that a plaintiff may recover only under one of the statutes." Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (collecting cases). Because plaintiff is entitled to default judgment under section 605, which "allows for a greater recovery than does [section] 553," the court will not address plaintiff's claim under section 553. Id. (citing J & J Sports Prods., Inc. v. Alvarez, No. 07 CV 8852, 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009)).

validity at this time. Accordingly, I respectfully recommend that plaintiff's claim under the Copyright Act claim be denied without prejudice.[3]

### C. Damages

1. <u>Statutory Damages</u>

Section 605(e)(C)(i)(II) of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(C)(i)(II). Plaintiff requests statutory damages of $10,000. (Lonstein Aff. at 13.)

The amount of a statutory damages award lies in the sound discretion of the district court. <u>See, e.g.</u>, <u>LX Food Grocery</u>, 2016 WL 6905946, at *4 (citing <u>Time Warner Cable of N.Y.C. v. Sanchez</u>, No. 02 CV 5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003)). Courts in the Second Circuit typically use either a "flat-fee" or a "per-person" method to determine statutory damages under section 605(e)(C)(i)(II). <u>See, e.g.</u>, <u>J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc.</u>, No. 15 CV 3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017). Under the "flat-fee" method, damages are equal to the amount that the defendants would have paid for authorization to broadcast the event lawfully. <u>See id.</u> Under the "per-person" method, damages are equal to the amount the patrons would collectively have paid to view the event in their homes. <u>See id.</u> "[T]he higher of the two amounts is generally awarded." <u>Id.</u>

In this case, the flat-fee method is appropriate, as plaintiff has failed to provide any evidence of the per-person residential fee. <u>See</u> <u>Dowling</u>, 2019 WL 4727448, at *4; <u>Joe Hand Promotions, Inc. v. Kings Point Rest., Inc.</u>, No. 17 CV 1870, 2017 WL 6611705, at *5 (E.D.N.Y. Nov. 3, 2017), <u>report and recommendation adopted</u>, 2017 WL 6611571 (E.D.N.Y. Dec. 27,

---

[3] At least one court in this district that awarded relief under the Copyright Act in a cable theft default case required the submission of a certificate of copyright registration prior to awarding such relief. <u>See</u> <u>Premium Sports, Inc. v. Mendes</u>, No. 17 CV 1309, 2018 WL 2078488, at *5 (E.D.N.Y. Mar. 1, 2018); (Minute Entry, dated Feb. 14, 2018, Dkt. No. 23.)

2017). For establishments with maximum occupancies of between 151 and 200 people, such as Momentos, the licensing fee would have been $6,700.[4] (See Am. Compl. ¶ 16; Rate Card, Ex. A to Hand Aff., Dkt. No. 16-2.) Accordingly, I respectfully recommend that plaintiff be awarded $6,700 in statutory damages for Momentos' violation of section 605(a).

   2. Enhanced Damages

Section 605(e)(3)(C)(ii) of the FCA permits the court, in its discretion, to increase the award of damages up to $100,000 when it finds a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests enhanced damages of $25,000. (Lonstein Aff. at 14.)

The fact that Momentos broadcast the Program without authorization establishes the willfulness of its conduct. See J & J Sports Prods., Inc. v. Tacqueria Juarez Rest., Inc., No. 17 CV 4158, 2018 WL 2056181, at * 6 (E.D.N.Y. Mar. 16, 2018) ("[Defendant] could not have involuntarily intercepted and exhibited the Event given that the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed."), report and recommendation adopted, 2018 WL 2048370 (E.D.N.Y. May 2, 2018); Time Warner Cable of New York City v. Googie's Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously[.]"). Courts use five factors to determine whether a willful violation warrants the imposition of enhanced damages, including whether there is

---

[4] Plaintiff's auditor estimated Momentos to have a maximum occupancy of between 101 and 200 people. (See Lubrano Aff.) This broad estimate potentially places Momentos in two different fee brackets—the fee for an establishment with a maximum occupancy of between 101 and 150 people would have been $5,200, whereas the fee for an establishment with a maximum occupancy of between 151 and 200 people would have been $6,700. (See Rate Card, Ex. A to Hand Aff., Dkt. No. 16-2.) Given that the midpoint between 101 and 200 is 150.5, which rounds to 151, and drawing all reasonable inferences in plaintiff's favor, I will presume a licensing fee of $6,700.

evidence of (1) repeated violations; (2) significant actual damages suffered by the plaintiff; (3) substantial unlawful monetary gains by defendant; (4) defendant's advertising of the event; and (5) defendant's collection of a cover charge or premiums for food and drinks.  J & J Sports Prods., Inc. v. Chulitas Enter. Corp., No. 12 CV 3177, 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014) (quoting J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010)).  In this case, while plaintiff does not allege that Momentos committed repeated violations or advertised the broadcast of the Program, its auditor reported that Momentos collected a $20 cover fee on the night of the broadcast.  (See Lubrano Aff.)  I therefore find it appropriate to award enhanced damages in addition to statutory damages.

Courts have taken varying approaches to awarding enhanced damages.  While some have awarded treble damages, others have awarded an amount double the statutory damages, an amount equal to the statutory damages, or no enhanced damages at all.  See J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc., No. 17 CV 2196, 2018 WL 2078482, at *7-8 (E.D.N.Y. Feb. 27, 2018) (collecting cases), report and recommendation adopted, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018).  In this case, I recommend awarding enhanced damages in an amount two times the statutory damages awarded.  See, e.g., J & J Sports Prods. Inc., v. Guncay, No. 18 CV 2097, 2018 WL 6313210, at *5 (awarding enhanced damages two times the statutory damages where defendant collected a $20 cover charge from eighty patrons), report and recommendation adopted, 2018 WL 6308773 (E.D.N.Y. Dec. 3, 2018); J & J Sports Prods., Inc. v. Onyx Dreams Inc., No. 12 CV 5355, 2013 WL 6192546, at *6-7 (E.D.N.Y. Nov. 23, 2013) (awarding enhanced damages two times the statutory damages where defendant collected a $20 cover charge).  Accordingly, I respectfully recommend that plaintiff be awarded enhanced damages of $13,400.

D. **Attorney's Fees and Costs**

1. Attorney's Fees

Section 605(e)(3)(B)(iii) of the FCA requires the court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008). When exercising their discretion to determine the reasonableness of attorney's fees, courts in this circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In addition, an application for attorney's fees must be supported by "contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010).

As a preliminary manner, plaintiff's counsel has not submitted contemporaneous time records, but rather has submitted an attorney-generated summary chart. (See Lonstein Aff. ¶¶ 14-15.) While the Second Circuit has deemed the contemporaneous records requirement to be a "strict rule," Scott, 626 F.3d at 133, courts have accepted alternative documentation in the form of affidavits, listings of hours, and/or summary charts where those documents were prepared from contemporaneous time records and contained the information required by Carey. See Kings Point Rest., 2017 WL 6611705, at *10 (denying fee application supported by summary

11

chart that was not based on contemporaneous records). Here, plaintiff's counsel represents that the summary chart was "produced based upon a compilation of contemporaneous records kept in the regular course of business." (Lonstein Aff. ¶ 15.) Moreover, the chart contains all of the information necessary for the court to determine the reasonableness of the fee request, such the date each legal service was rendered, a description of the work performed, the amount of time expended, the amount charged, and by whom the work was performed. (See id. ¶ 14.) Therefore, the court accepts plaintiff's counsel's summary chart as sufficient documentation to support plaintiff's fee application.

        The court must next assess whether plaintiff's counsel requests a reasonable hourly rate. A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). The "community" is generally considered the district where the district court sits. See Arbor Hill, 522 F.3d at 190. In this district, the prevailing hourly rates are "generally between $300 and $400 for law firm partners, $200 to $300 for senior associates, and $100 to $200 for junior associates." Demopoulos v. Sweet Clover Farms Inc., No. 17 CV 7257, 2019 WL 6619352, at *6 (E.D.N.Y. Oct. 29, 2019) (quoting LG Capital Funding, LLC v. 5Barz Int'l, Inc., No. 16 CV 2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019)), report and recommendation adopted, 2019 WL 6615338 (E.D.N.Y. Dec. 5, 2019).

Plaintiff is represented by the Lonstein Law Office, P.C., which requests hourly rates of $350 for Julie Cohen Lonstein, a partner with twenty-seven years of experience, $275 for Alexander Z. Lonstein, who plaintiff represents to be a first-year associate, and $95 for a paralegal. (See Lonstein Aff. ¶¶ 13-14.) With respect to Ms. Lonstein and the paralegal, the requested rates are slightly higher than what is typically awarded for comparable work in this district. See, e.g., Zuffa, LLC v. South Beach Saloon, Inc., No. 15 CV 6355, 2019 1322620, at *9 (E.D.N.Y. Mar. 6, 2019) (finding $300 to be an appropriate hourly rate for an experienced attorney in a cable theft case), report and recommendation adopted, 2019 WL 1317568 (E.D.N.Y. Mar. 22, 2019); Joe Hand Promotions, Inc. v. Bernal, No. 18 CV 85, 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (reducing hourly rate for Ms. Lonstein to $300 from requested $350 and hourly rate for paralegal to $90 from requested $95); see also Trs. of Leather Goods, Handbags, and Novelty Workers' Union No. 1 Joint Ret. Fund v. Crossbay Seashell Fish Mkt., Inc., No. 19 CV 1722, 2019 WL 4418884, at *8 (E.D.N.Y. Aug. 30, 2019) (finding $90 per hour to be a reasonable hourly rate for the work of litigation support staff), report and recommendation adopted, 2019 WL 4415621 (E.D.N.Y. Sept. 16, 2019). Therefore, I respectfully recommend an award of $300 per hour for the work of Ms. Lonstein and a rate of $90 per hour for the work of the paralegal.

With respect to Mr. Lonstein, not only is the requested rate higher than what is typically awarded for the work of junior associates in this district, but a search of New York's attorney directory indicates that he was admitted to the New York bar on April 8, 2019 and thus a portion of his work was performed prior to his admission.[5] (See Lonstein Aff. ¶ 14; Attorney

---

[5] The court further suspects, based on Mr. Lonstein's date of admission, that the two hours spent on "factual research and development" in September and October of 2017 were billed while he was still in law school. (See Lonstein Aff. ¶ 14.) The court notes that Ms. Lonstein, in her

(Continued . . .)

Search for "Alexander Lonstein," New York State Unified Court System, https://iapps.courts.state.ny.us/attorney/AttorneySearch#search_result). "In this District, law clerks [who are not admitted to the bar] are typically awarded fees at the same hourly rate as legal paraprofessionals, or paralegals." 5Barz Int'l, 2019 WL 3082478, at *2; see also Perez v. Pino Grocery Corp., 17 CV 2965, 2018 WL 4138935, at *9 (E.D.N.Y. Apr. 16, 2018) ("Law school graduates who have not yet been admitted to the bar have been awarded rates between $75 and $100 per hour."), report and recommendation adopted, 2018 WL 4119236 (E.D.N.Y. Aug. 29, 2018). Accordingly, I respectfully recommend that Mr. Lonstein's work prior to his admission to the bar be compensated at the rate of $90 per hour and that his work following his admission to the bar be compensated at a rate of $150 per hour, reflecting his status as a newly admitted attorney and the simplicity of this case. See 5Barz Int'l, 2019 WL 3082478, at *2 (awarding $85 and $150 per hour, respectively, for the work of a law school graduate not yet admitted to practice and a junior associate); compare Bernal, 2019 WL 885930, at *6 (reducing hourly rate for an associate with five years of experience to $200 from requested $275).

      Finally, the court must assess the reasonableness of the number of hours spent on this litigation. Plaintiff requests compensation for a total of 15.10 hours, representing .7 for Ms. Lonstein, 5.7 for Mr. Lonstein (2.3 pre-bar admission and 3.4 post-bar admission), and 8.7 for the paralegal. (See Lonstein Aff. ¶ 14.) I find based on plaintiff's summary chart that the time spent was reasonable and do not recommend any reduction. See Bernal, 2019 WL 885930, at *6

---

affidavit, provides little information as to Mr. Lonstein's experience other than misleadingly implying that he was a "first year associate" for the duration of the time spent on this matter. (See id.) Her affidavit does not, for example, state when he graduated from law school or when he was admitted to the bar, instead leaving the court to determine the latter on its own through a search of New York's attorney records. (See id.) While I have recommended an award of fees for Mr. Lonstein's work in the instant case, plaintiff's counsel is hereby on notice that fee applications lacking in essential details about attorney experience may be denied in the future.

(awarding compensation for 18.8 hours billed without reduction); but see Joe Hand Promotions, Inc. v. Khan, No. 17 CV 3744, 2018 WL 3973008, at *4 (E.D.N.Y. Aug. 20, 2018) (finding 7.7 hours to be to be excessive in a cable theft default case and applying a forty percent reduction). In sum, I recommend that plaintiff be awarded $1,710 in attorney's fees, as follows:

| Name | Hourly Rate | Number of Hours | Total |
| --- | --- | --- | --- |
| Julie Cohen Lonstein | $300 | .7 | $210 |
| Alexander Lonstein (pre-bar admission) | $90 | 2.3 | $207 |
| Alexander Lonstein (post-bar admission) | $150 | 3.4 | $510 |
| Paralegal | $90 | 8.7 | $783 |
| **TOTAL** | | | **$1,710** |

2. Costs

In addition, plaintiff requests $1,607.50 in costs, representing $400 for this court's filing fee, $397.50 for service of process on Dilone, $60 for service of process on Momentos, and $750 in investigative fees for the work of its auditor. (See Lonstein Aff. ¶ 13; Exs. A, B.) Service and filing fees are recoverable by a prevailing party "as a matter of course." Joe Hand Promotions, Inc. v. Levin, No. 18 CV 9389, 2019 WL 3050852, at *6 (S.D.N.Y. July 12, 2019). Since plaintiff has not prevailed against Dilone, it is not entitled to recover the cost of serving him. See Lu Nan Fan v. Jenny & Richard's Inc., 17 CV 6963, 2019 WL 1549033, at *16 (E.D.N.Y. Feb. 22, 2019) (where claims as to one defendant were dismissed for ineffective service, declining to hold remaining defendants liable for the cost of that service), report and recommendation adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 19, 2019); Hernandez v. Delta Deli Mkt. Inc., No. 18 CV 375, 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (where claims as to all but one defendant were dismissed, remaining defendant "only responsible for the cost of its

15

own service"). Accordingly, I respectfully recommend that plaintiff be awarded $400 for the cost of the filing fee and $60 for the cost of service of process on Momentos.

In order to recover investigative costs under the FCA, "a plaintiff must make a showing similar to that required to recover attorney's fees." Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 67 (E.D.N.Y. 2006) (citing Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997)). Specifically, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." Id. An invoice standing alone is typically considered insufficient documentation. See, e.g., J & J Sports Prods., Inc. v. Guncay, No. 18 CV 2097, 2019 WL 1876830, at *2 (E.D.N.Y. Apr. 26, 2019) (denying request for investigative fees where plaintiff submitted only an invoice); J & J Sports Prods. Inc. v. Silvestre, 18 CV 3731, 2019 WL 179810, at *7 (S.D.N.Y. Jan. 14, 2019) (same); Autar, 426 F. Supp. 2d at 67 (same). Because plaintiff in this case has submitted only an invoice, without any supporting documentation that would allow the court to determine the reasonableness of the charged rate, I respectfully recommend that its request for investigative costs be denied.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to its claim against Momentos under section 605 of the FCA, but denied as to Dilone; that its claim under the Copyright Act be denied as to both defendants; and that it be awarded $6,700 in statutory damages, $13,400 in enhanced damages, $1,710 in attorney's fees, and $460 in costs, for a total of $22,270.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Garaufis and to my chambers, within fourteen (14)

days. Plaintiff is granted leave to file additional documentation as to service of process on Dilone and/or its valid certificate of copyright registration. Any supplemental documentation must be received within the objection period. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Plaintiff is directed to serve copies of this Report and Recommendation on the defaulting defendants by regular mail, and to file proof of service within ten days of the date of this Report and Recommendation.

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
January 23, 2020