UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOE HAND PROMOTIONS, INC., as Broadcast Licensee of the August 26, 2017 Mayweather vs. McGregor Match,

          Plaintiff,

-against-

VIRGILIO DILONE, individually, and as officer, director, shareholder, and/or principal of LA VIDA LOCA RESTAURANT AND BAR CORP., d/b/a MOMENTOS BAR & GRILL, and LA VIDA LOCA RESTAURANT AND BAR CORP., d/b/a MOMENTOS BAR & GRILL,

          Defendants.



ORDER
19-CV-871 (NGG) (RML)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Joe Hand Promotions, Inc. brought this action alleging violations of the Federal Communications Act ("FCA") and the Copyright Act on February 14, 2019. (Compl. (Dkt. 1).) No defendant has answered or appeared in this action, and Plaintiff moved for default judgment against both Defendants on June 28, 2019. (Mot. for Default J. (Dkt. 16).) The undersigned referred Plaintiff's motion to Magistrate Judge Robert M. Levy for a report and recommendation (the "Jan. 23 R&R"). (July 1, 2019 Order Referring Mot.) On January 23, 2020, Judge Levy issued an R&R that the court: (1) grant Plaintiff's FCA claim and deny Plaintiff's copyright claim against Defendant Momentos and (2) deny both Plaintiff's FCA and copyright claims against Defendant Dilone. (Jan. 23 R&R at 16.) Judge Levy also recommended that the court award statutory damages, enhanced damages, attorney's fees, and costs. (*Id.*) Finally, Judge Levy granted Plaintiff leave to file supplemental documentation with the court. (*Id.* at 17.)

1

Plaintiff made supplemental submissions (Dkt. 22) on February 5, 2020. After reviewing Plaintiff's supplemental submissions, Judge Levy issued the annexed supplemental R&R (the "Supplemental R&R"). In the Supplemental R&R, Judge Levy declined to revise his earlier recommendations as to Defendant Dilone's liability or as to attorney's fees. However, Judge Levy now recommends that the court grant Plaintiff's copyright claim against Defendant Momentos, and also that the court award additional statutory and enhanced damages. (Supplemental R&R at 9.)

No party has objected to either the Jan. 23 R&R or the Supplemental R&R, and the time in which to do so has passed. *See* Fed. R. of Civ. P. 72(b)(2). Therefore, the court reviews both for clear error. *See Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. 09-CV-2502 (KAM), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010); *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). Having found none, the court (1) ADOPTS the Supplemental R&R in full and (2) ADOPTS the Jan. R&R insofar as it is consistent with the Supplemental R&R.

SO ORDERED.

Dated:   Brooklyn, New York
         March 13, 2020

s/Nicholas G. Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge

# SUPPLEMENTAL REPORT AND RECOMMENDATION

LEVY, United States Magistrate Judge:

By order dated July 1, 2019, the Honorable Nicholas G. Garaufis, United States District Judge, referred plaintiff's motion for default judgment against defendants Virgilio Dilone ("Dilone") and La Vida Loca Restaurant and Bar Corp. d/b/a Momentos Bar and Grill ("Momentos") (collectively, "defendants") to me for Report and Recommendation. On January 23, 2020, I issued a Report and Recommendation in which I recommended that plaintiff's motion be granted with respect to its claim against Momentos under the Federal Communications Act, but denied as to Dilone; that its claim under the Copyright Act be denied as to both defendants; and that it be awarded $20,100 in damages, $1,710 in attorney's fees, and $460 in costs. (See Report and Recommendation, dated Jan. 23, 2020 (the "January 23 R & R"), Dkt. No. 19.) I additionally granted plaintiff leave to file supplemental documentation as to two discrete issues, described in greater detail *infra*. (See id. at 17.) Plaintiff did so on February 5, 2020. (See Affidavit of Alexander Lonstein, Esq., dated Feb. 5, 2020 ("Alexander Lonstein Aff."), Dkt. No. 22; Supplemental Materials, annexed to Alexander Lonstein Aff. as Exs. A-F.) Having reviewed the supplemental materials plaintiff submitted, I revise my recommendation as to the Copyright Act claim against Momentos, as set forth below. I do not revise my recommendations as to Dilone's liability or as to attorney's fees.

## BACKGROUND AND FACTS

Familiarity with the underlying facts of this case and the January 23 R & R is assumed. Briefly, I recommended denial of plaintiff's claims against Dilone because I found that plaintiff had provided insufficient proof that the address where substituted service was carried out was in fact Dilone's residence at the time of service. (See Jan. 23 R & R at 3-6.) I further

1

recommended denial of plaintiff's claim under the Copyright Act because plaintiff had not submitted a certificate of copyright registration, and thus had not established ownership of a valid copyright. (See id. at 7-8.) However, I granted plaintiff leave to file supplemental documentation as to those two issues within the objection period. (See id. at 17.) On February 5, plaintiff submitted supplemental documentation with respect to both issues. (See Alexander Lonstein Aff.; Exs. A-F.) Plaintiff additionally requested that I reconsider my recommendation as to attorney's fees. (See Alexander Lonstein Aff. ¶¶ 10-15.)

DISCUSSION

1. Service of Process on Dilone

In the January 23 R & R, I found that plaintiff had provided insufficient proof that the address where substituted service was carried out, 5009 Broadway, Apartment 205, New York, New York 10034 (the "Broadway Address"), was actually where Dilone resided at the time of service, and thus I recommended denial of plaintiff's motion for default judgment as to Dilone. (See Jan. 23 R & R at 3-6.) I noted in a footnote that, in order to prove proper service, "simply establishing that a person named Virgilio Dilone lived at the Broadway Address at the time of service would not be sufficient. Rather, plaintiff would need to establish that the Virgilio Dilone who is the alleged officer, director, shareholder, and/or principal of Momentos resided at that address." (Id. at 5 n.1.)

Plaintiff now submits a WestLaw "PeopleMap" report, which it claims establishes that Dilone resided at the Broadway Address at the time of service. (See Alexander Lonstein Aff. ¶¶ 5-8; PeopleMap Report, annexed as Ex. C to Alexander Lonstein Aff.) It does not. First, according to the PeopleMap Report, the Virgilio Dilone who once resided at the Broadway Address was last reported as living there in April of 2017. (See PeopleMap Report, Ex. C to

Alexander Lonstein Aff., at 53.) Service of process was carried out on "Mr. Richard," Dilone's alleged co-resident, on March 1, 2019. (See Affidavit of Service of Yoler Jean-Baptiste, sworn to Mar. 7, 2019, Dkt. No. 11.) Moreover, the PeopleMap Report does not establish that the Virgilio Dilone listed is the same Virgilio Dilone who is alleged to be the "officer, director, shareholder, and/or principal" of Momentos. (Amended Complaint, dated Feb. 14, 2019 ("Am. Compl."), Dkt. No. 8, ¶ 8.) It merely establishes that someone with the same name resided there, as of April 2017—almost two years before service of process was carried out.[1]

Default judgment is an "extreme remedy," LaBarbera v. Fed. Metal & Glass Corp., 666 F. Supp. 3d 341, 347 (E.D.N.Y. 2009), and it is the court's responsibility to ensure that a proper basis for relief exists. See Ferrera v. Tire Shop Ctr., No. 14 CV 4657, 2015 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), report and recommendation adopted, 2015 WL 3604078 (E.D.N.Y. June 5, 2015). This responsibility takes on added weight when analyzing service of process, which implicates due process considerations. Given that plaintiff was ultimately unable to assure the court that the correct Virgilio Dilone was served with process, I decline to revise my recommendation that plaintiff's motion for default judgment be denied as to Dilone.

2. Copyright Act

In the January 23 R & R, I recommended denial of plaintiff's claim for copyright infringement, as plaintiff had not established ownership of a valid copyright, one of the two required elements of that claim. (See Jan. 23 R & R at 7-8.) Plaintiff now submits a timely

---

[1] It furthermore appears that the Virgilio Dilone who lived at the Broadway Address in 2017 may be deceased. The PeopleMap Report indicates that this individual had also resided in Belleville, New Jersey. (See PeopleMap Report, Ex. C to Alexander Lonstein Aff. at 53.) The court's Google search revealed a 2017 obituary for an individual named Virgilio Dilone who resided in Belleville, New Jersey. (See Virgilio Dilone Obituary, dated Jan. 15, 2017, https://www.martinezmemorial.com/obituary/4072883.)

3

obtained certificate of copyright registration for the August 26, 2017 prize fight between Floyd Mayweather Jr. and Conor McGregor (the "Program") held by Showtime Network Inc. ("Showtime"). (See Certificate of Copyright Registration, dated Oct. 26, 2017 (the "Certificate"), Ex. D to Alexander Lonstein Aff.) Plaintiff also submits a signed agreement between itself and Showtime (the "Agreement") granting it the exclusive distribution and public performance rights as to commercial establishments for the live broadcast of the Program, as well as the exclusive right to sue for copyright infringement related to piracy of the live broadcast by commercial establishments.[2] (See Agreement, dated Nov. 21, 2017, Ex. E to Alexander Lonstein Aff.)

   a. *Liability*

---

[2] The Agreement is sufficient to confer statutory standing upon plaintiff pursuant to section 501(b) of the Copyright Act, which provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The Second Circuit has held that, while an assignee of the bare right to sue is not such an owner, "an exclusive licensee is a 'legal owner' of an exclusive right for purposes of a copyright infringement action under section 501(b)[.]" John Wiley & Sons, Inc. v. DRK Photo, 882 F.3d 394, 398-99, 410 (2d Cir. 2018), cert. denied, 139 S. Ct. 237 (2018). Because the Agreement grants plaintiff an exclusive license in distribution and public performance rights, in addition to the right to sue, it is sufficient to confer legal ownership for the purposes of section 501(b). I note that the Agreement was not executed until November 21, 2017, meaning that plaintiff's rights in the copyrighted material did not arise until after the alleged infringement had occurred. It is a general rule that if "accrued causes of action are not expressly included in the assignment [of a copyright], the assignee will not be able to prosecute them." ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991). In this case, the Agreement grants plaintiff the right to prosecute actions based solely on violations of its "Commercial Rights," defined as "[t]he exclusive right to distribute and publicly perform the Event live on August 26, 2017 to Commercial Premises in the Territory." (See Agreement.) Because the Agreement, by its express terms, only authorizes plaintiff to sue for infringement that occurred on a single date prior to its execution, I find that it expressly includes accrued causes of action. To read the Agreement otherwise would render it meaningless. See Hutson v. Notorious B.I.G., LLC, No. 14 CV 2307, 2015 WL 9450623, at *7 (S.D.N.Y. Dec. 22, 2015) (reading assignment language to expressly include accrued causes of action, where alternate reading would render it meaningless); see also Hester v. Navigators Ins. Co., 917 F. Supp. 2d 290, 296 (S.D.N.Y. 2013) ("Courts must avoid interpretations that render contract provisions meaningless or superfluous." (internal quotation marks omitted)).

As described in the January 23 R & R, "[t]o establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106." Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (internal quotation marks omitted) (quoting A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001)). Those rights include the right "to distribute copies . . . of the copyrighted work," 17 U.S.C. § 106(3), and the right "to perform the copyrighted work publicly," id. § 106(4).

Plaintiff's submission of the Certificate and the Agreement creates a presumption of copyright validity which Momentos, through its default, has failed to rebut. See 17 U.S.C. § 410(c); Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997); see also Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 847 (2d Cir. 1997) (noting that "recorded broadcasts of [sporting events] . . . are . . . entitled to copyright protection"). Plaintiff alleges that Momentos willfully infringed upon its exclusive rights of distribution and public performance by broadcasting the Program without authorization. (See Am. Compl. ¶¶ 40-48.) Courts have found similar allegations sufficient to establish a willful violation of 17 U.S.C. § 501(a). See, e.g., Joe Hand Promotions, Inc. v. Levin, No. 18 CV 9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019); Joe Hand Promotions, Inc. v. Maupin, No. 15 CV 6355, 2018 WL 2417840, at *4 (E.D.N.Y. May 25, 2018); Premium Sports, Inc. v. Mendes, No. 17 CV 1309, 2018 WL 2078488, at *4-5 (E.D.N.Y. Mar. 1, 2018). Therefore, I respectfully recommend that default judgment be entered against Momentos for copyright infringement under section 501(a).

b. *Damages*

5

Section 504(c)(1) of the Copyright Act permits a prevailing plaintiff to choose between recovering actual damages or recovering statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Where the infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2). Plaintiff requests statutory damages of $10,000 and enhanced damages of $30,000. (See Affidavit of Julie Cohen Lonstein, Esq., sworn to June 28, 2019 ("Julie Cohen Lonstein Aff."), Dkt. No. 16-3, at 13-14.)

I have already recommended an award of $6,700 in statutory damages and $13,400 in enhanced damages for plaintiff's claims under the Federal Communications Act ("FCA"). (See Jan. 23 R & R at 8-10.) While an award of damages under the FCA does not preclude an award of damages under the Copyright Act, when faced with requests for full damages under each statute, courts have exercised their discretion to significantly reduce the amount awarded under the Copyright Act. See, e.g., Levin, 2019 WL 3050852, at *5 ("[A]lthough Joe Hand seeks to recover a full measure of damages under each of the Communications Act and the Copyright Act, the Court does not believe that such a course is appropriate."); Mendes, 2018 WL 2078488, at *10 ("The Court concludes that it would not be just to award plaintiff its requested $15,000 in damages under the Copyright Act because such an award would be demonstrably excessive in light of the statutory damages the Court has already recommended under the Communications Act[.]"); but see Maupin, 2018 WL 2417840, at *8 (awarding equivalent amounts under both statutes).

I agree with those courts that have declined to award full damages under both the FCA and the Copyright Act. Such an approach appropriately recognizes the extent to which the purposes of the two statutes overlap, as well as the court's own obligation to ensure that the

6

award entered is one that it "considers just." 17 U.S.C. § 504(c)(1); see also Levin, 2019 WL 3050852, at *5 ("[I]t is appropriate for this Court, in exercising its broad discretion in setting the amount of statutory damages under the Copyright Act, to consider that it has already awarded Joe Hand a substantial sum under the Communications Act and has thereby vindicated the aims of the Copyright Act to the extent that the two statutes' purposes overlap." (internal quotation marks and citation omitted)). In this case, I recommend an award of $1,340 in statutory damages and $2,680 in enhanced damages, for a total of $4,020 under the Copyright Act, representing twenty percent of the amount that I have recommended plaintiff be awarded under the FCA.[3]

3. Attorney's Fees

Finally, plaintiff asks the court to reconsider its recommendation as to attorney's fees. Plaintiff's initial fee application reflected the work of two attorneys—partner Julie Cohen Lonstein and junior associate Alexander Lonstein—as well as one paralegal. (See Julie Cohen Lonstein Aff. ¶¶ 13-14.) In the January 23 R & R, I recommended a fee award of $1,710, representing $210 for the work of Julie Cohen Lonstein (.7 hours at a rate of $300 per hour); $207 for Alexander Lonstein's work prior to his admission to the bar (2.3 hours at rate of $90 per hour); $510 for Mr. Lonstein's work after his admission to the bar (3.4 hours at a rate of $150 per hour); and $783 for the work of the paralegal (8.7 hours at a rate of $90 per hour). (See Jan. 23 R & R at 15). Plaintiff now asserts that the 2.3 hours originally allocated to Mr. Lonstein's pre-bar admission work were in fact performed by a different associate, senior to Mr. Lonstein, who billed at a rate of $275 per hour. (See Alexander Lonstein Aff. ¶¶ 10-15.)

---

[3] See, e.g., Levin, 2019 WL 3050852, at *5-6 (awarding $7,000 under the Copyright Act—twenty percent of the $35,000 awarded under the FCA); Mendes, 2018 WL 2078488, at *9-10 (awarding $2,000 under the Copyright Act—twenty-five percent of the $8,000 awarded under the FCA); but see Maupin, 2018 WL 2417840, at *8 (awarding $3,000 under each statute).

7

As a preliminary matter, I granted plaintiff leave to supplement with respect to two issues only: service of process on Dilone and copyright ownership. I did not grant leave to supplement with respect to attorney's fees. To the extent that plaintiff's current application may be construed as a motion for reconsideration, it is unclear whether such a motion is proper following a Report and Recommendation, which not a "final judgment, order, or proceeding." FED. R. CIV. P. 60(b); compare Marotte v. City of New York, No. 16 CV 8953, 2019 WL 926103, at *1 n.1 (E.D.N.Y. Feb. 26, 2019) ("It is unclear if a motion for reconsideration is even proper under FED. R. CIV. P. 60(b), as a report and recommendation is not a 'final judgment, order, or proceeding.' But as it has been the practice in this district to permit motions for reconsideration of a report and recommendation, the Court will consider the motion." (internal quotation marks and citations omitted)), with Dunn v. Deutsche Bank Nat'l Tr., No. 15 CV 809, 2015 WL 5650182, at *1 (N.D.N.Y. Sept. 24, 2015) ("[T]he Report–Recommendation submitted by the Magistrate Judge is nonbinding and thus, not properly subject to a motion for reconsideration.")

Regardless, plaintiff has failed to demonstrate adequate grounds for reconsideration. A motion for reconsideration will be granted only where "the moving party can point to controlling decisions or data that the court overlooked." Shrader v. CSX Transp., Inc., 70 F.3d 225, 257 (2d Cir. 1995). A party may not use a motion for reconsideration to "introduce new facts or raise new arguments that could have been previously presented to the court." Belfiore v. Proctor & Gamble & Co., 140 F. Supp. 3d 241, 244 (E.D.N.Y. 2015); see also Rafter v. Liddle, 288 F. App'x 768, 769 (2d Cir. 2008) ("[M]otions [for reconsideration] are not vehicles for taking a 'second bite at the apple,' and we do not consider facts not in the record to be facts that the court 'overlooked.'" (internal citation omitted)). In this case, plaintiff is

attempting to introduce information that it could and should have included in its initial fee application. Accordingly, I decline to revise my recommendation as to attorney's fees.

CONCLUSION

For the reasons explained above, I revise my recommendation as to plaintiff's copyright infringement claim against Momentos. I respectfully recommend that default judgment be entered against Momentos under 17 U.S.C. § 501(a) and that plaintiff be awarded an additional $1,340 in statutory damages and $2,680 in enhanced damages, for a total of $4,020 under the Copyright Act. I decline to revise my recommendations as to Dilone's liability or as to attorney's fees. Any objections to this supplemental Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Garaufis and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Plaintiff is directed to serve copies of this Report and Recommendation on the defaulting defendants by regular mail, and to file proof of service within ten days of the date of this Report and Recommendation.

Respectfully submitted,

/s/
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
February 26, 2020